## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **MARIA WELLS**<br><br>*Plaintiff,*<br><br><br>-- against –<br><br><br>**LAW OFFICES OF ROSE & ROSE, PLLC**<br><br>**ROSE & ROSE**<br><br><br>*Defendants.* | **Civil Action No. 23-cv-1065(LJL)**<br><br><br><br>**AMENDED COMPLAINT AND JURY DEMAND** |

Plaintiff Maria Wells hereby alleges, upon personal knowledge as to herself and upon information and belief as to other matters, as follows:

### PRELIMINARY STATEMENT

1.      Plaintiff Maria Wells ("Ms. Wells") is a disabled senior citizen and monolingual Spanish-speaker who lives on a limited fixed income.  Defendants, both debt collection law firms, sued Ms. Wells for rent arrears of almost $10,000 for an apartment she had never lived in or signed a lease for. Defendants continued with the litigation against Ms. Wells even after she provided them with a copy of her New York State non-driver identification card, showing that her photo and signature did not match those on the driver's license attached to the purported rental application for the apartment. After an alleged written initial communication which Ms. Wells never received, Defendants never identified themselves as debt collectors in their communications with her. Instead of verifying the debt, Defendants pressured Ms. Wells to

provide more and more personal and confidential information to prove she was a victim of identity theft, and when she did so, refused to discontinue the action until after she retained counsel. Plaintiff now brings the instant action based on Defendants' violations of the Fair Debt Collection and Practices Act ("FDCPA"), codified at 15 U.S.C. § 1692, *et seq.* and Regulation F, its implementing regulations at 12 CFR §1006 *et seq.*

## JURISDICTION AND VENUE

2.      This Court has jurisdiction pursuant to the FDCPA, 15 U.S.C. § 1692k(d), and 28 U.S.C. § 1331.

3.      Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

4.       Venue in this district is proper under 28 USC § 1391(b) because the unlawful conduct complained of herein occurred within the Southern District of New York and Defendants transact business in the Southern District of New York.

## PARTIES

5.      Plaintiff Maria Wells is a natural individual who lives in New York County.

6.      Ms. Wells is a "consumer" as defined by 15 U.S.C.  § 1692a(3).

7.      Defendant Law Offices of Rose & Rose, PLLC ("PLLC"), is a New York professional limited liability corporation with a principal place of business at 291 Broadway, 13th Floor, New York, NY 10007.

8.      Defendant Rose & Rose (hereinafter "R & R") is a general partnership with a principal place of business at 291 Broadway, 13th Floor, New York, NY 10007.

9.      The PLLC and R&R regularly file debt collection lawsuits in the Civil Court and Housing Court of New York City on behalf of their clients, primarily landlords, who retain Defendants to collect rent arrears from their tenants.

10.     The PLLC and R & R collect debts from consumers using the mail for service of papers, and upon information and belief, the telephone.

11.     The PLLC and R & R regularly identify themselves as debt collectors on notices they send to tenants when seeking rent arrears on behalf of their landlord clients.

11.     As law firms whose business consists primarily of representing landlords in actions to collect rent arrears, the PLLC and R & R regularly collect debts alleged to be due to another.

12.     The PLLC and R & R collectively file hundreds of debt collection cases annually in New York City Civil Court and New York City Housing Court according to the court's publicly available database, "e-courts."

13.     The PLLC and R & R are debt collectors as defined by the FDCPA, 15 U.S.C. § 1692a(6).

## STATUTORY FRAMEWORK

### The Fair Debt Collection Practices Act

13.     Congress enacted the FDCPA to stop "the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a).

14.     The FDCPA applies to consumer debt, which is any obligation to pay money "arising out of a transaction" entered into "primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5).

15.     Under the FDCPA, "a debt collector may not use any false, deceptive, or misleading representations or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

16.     Prohibited conduct in violation of this section includes, but is not limited to:

a. "The false representation or implication of the character, amount, or legal status of any debt."  15 U.S.C. § 1692e(2).

b. "The threat to take any legal action that cannot legally be taken or that is not intended to be taken."  15 U.S.C. § 1692e(5).

c. "Communicating or threatening to communicate to any person credit information which is known or which should be known to be false."  15 U.S.C. § 1692e(8).

d. "The use of any false representation or deceptive means to collect or attempt to collect any debt." 15 U.S.C. § 1692e(10).

e. "The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector." 15 U.S.C. 1692e(11)

17.    A debt collector is further prohibited from the "use of unfair or unconscionable means to collect or attempt to collect a debt", including but not limited to "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

18.     In addition, a debt collector may not "engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d.

19.     If a consumer disputes the validity of the debts in writing within thirty days of the debt collector's initial communication with the consumer regarding the collection of the debt, the debt collector must "cease collection of the debt, or any disputed portion thereof" until the debt collector obtains and sends to the consumer such verification. 15 U.S.C. § 1692g(b).

20.     An individual may recover $1,000 in statutory damages from a debt collector who violates the above provisions of the FDCPA. 15 U.S.C. § 1692k(a)(2)(A).

21.     An individual may also recover any actual damages sustained as a result of a debt collector's violations of the FDCPA. 15 U.S.C. § 1692k(a)(1).

22.      In a successful action, an individual may recover costs and reasonable attorney's fees as determined by the court.  15 USC § 1692k(a)(3).

### Regulation F

23.     Regulation F, 12 CFR §1006 *et seq.* implements the FDCPA.

24.     Subpart B of Regulation F, found at 12 CFR §§1006.6-1006.42, governs a debt collector's obligations when communicating with consumers related to a debt they are collecting.

25.     Regulation F requires that debt collectors identify themselves as debt collectors and that any information they obtain from the consumer may be used to collect on the debt, in the initial communication with the consumer as well in subsequent communications, regardless of who initiates the communication. 12 CFR §1006.18(e)(1) and (2), as amended November 30, 2021. *See also* Official Interpretation Comment 1, https://www.consumerfinance.gov/rules-policy/regulations/1006/18/#e-1.

26.     Regulation F also requires that debt collectors notify consumers of their right to seek verification of the debt in their initial communication, in a manner that is clear and conspicuous. CFR §1006.34

## FACTS RELATED TO THIS COMPLAINT

27.     Ms. Wells is a disabled sixty-three-year-old monolingual Spanish speaker whose only income is Social Security.

28.     She has lived in her Upper Manhattan apartment for more than thirty years.

29.     According to their website, roseandroselaw.com, R&R engages in real estate work on behalf of landlords.

30.     The PLLC and R & R share the same physical address.

31.     Upon information and belief, the PLLC employs attorneys who are also employees of R&R.

32.     The PLLC routinely uses R & R bluebacks and, upon information and belief, R&R letterhead when corresponding with consumers they sue.

33.     The R&R website lists nonpayments as a type of case they do for their clients.

34.     According to e-courts, the on-line New York Court database which lists filed cases, Defendants collectively file hundreds of cases each year on behalf of their landlord clients to collect debts consisting of rent arrears.

35.     Defendant R&R routinely mails and/or e-mails notices to tenants prior to commencement of debt collection actions informing them of their right to dispute the debt and that R&R is a debt collector.

36.     At least some of these notices identify the PLLC as R & R's "attorneys" and provide the PLLC email as a contact for further information.

37.     Defendants claim to have sent such an e-mail to Ms. Wells in May 2021, but the e-mail address it was allegedly sent to does not belong to Ms. Wells so she never received it.

38.     The e-mail indicates it was sent by the PLLC, but the signature line in the body of the email says it was from R & R.

39.     The letter attachment to the email is on R&R letterhead, but informs Ms. Wells to contact its attorneys at an e-mail address belonging to the PLLC.  The letter itself is unsigned.

40.     Upon information and belief, the letter attached to the e-mail (hereinafter "G Notice") was intended to provide the disclosures required by FDCPA Section 1692g, informing Ms. Wells that Defendants are debt collectors and informing her of her right to ask for verification of the debt.

41.     The G Notice claimed that Ms. Wells owed 1265 Olmstead Avenue over $16,000 in rent arrears.

42.     On January 12, 2022, Defendants filed a debt collection action against Ms. Wells, *1265 Olmstead Avenue LLC v. Maria Wells,* in New York County Civil Court under Index Number CV 000381-22/NY, seeking to recover $9,965.52 in rental arrears plus a minimum of $5,000 in attorney's fees.

43.     The Summons and Complaint (hereinafter "Complaint") were signed by the PLLC, but the attached blueback listed R&R as the attorney for the landlord plaintiff.

44.     The Complaint alleged that Ms. Wells breached a written lease agreement for a residential apartment located at 1265 Olmstead Avenue, Apartment 2R, Bronx, NY 10462 (hereinafter the "Bronx Apartment.") and was signed by Brett Klatsky, who is listed on the R&R website as one of its attorneys, but who identified himself as an attorney for the PLLC on the Complaint.

45.     On February 10, 2022, Ms. Wells was served with a copy of the Complaint at her residence, an apartment in Upper Manhattan (hereinafter "Actual Residence").

46.     Ms. Wells could not read the Complaint herself because she is limited English proficient, so she asked her daughter Anel Wells (hereinafter "Anel") to explain what it said

47.     Ms. Wells did not understand why she had been sued for rent arrears in a Bronx apartment she had never signed a lease for and had never lived in.

48.     Ms. Wells asked Anel to call Defendants on her behalf to tell them they had made a mistake because she had no connection to the Bronx Apartment.

49.     Anel called Defendants that same day at the number listed on the Complaint.

50.     Anel spoke to a receptionist and was told an attorney would call her back.

51.     At no point was Anel informed that she was speaking to a debt collector.

52.     When no one got back to her, Anel called Defendants' phone number again on February 11, 2022, and was finally given an e-mail to write to an attorney,

53.     Again, she was not informed that she was speaking to a debt collector.

54.     On February 11, 2022, Anel wrote to the email address she was given, general@RosePLLC.com, on behalf of Ms. Wells and explained that Ms. Wells had never lived in the Bronx apartment and asked if a mistake had been made.

55.     Mr. Maulik Sharma (hereinafter "Mr. Sharma"), an attorney employed by R&R, responded to the e-mail asking for confirmation of Ms. Wells' social security number.

56.     After Anel provided Ms. Wells' social security number, Mr. Sharma forwarded her a copy of a tenant application with supporting documents for the Bronx Apartment (hereinafter "Tenant Application") on February 13, 2022. The Tenant Application did not include the lease for the Bronx apartment which the Complaint alleged had been breached or a

breakdown of the alleged arrears, but did included other documents purported to belong to Ms. Wells: a driver's license, a letter from an employer, a bank account statement, a W-9 form, and a tax return.

57.     On its face, the Tenant Application showed signs of fraud, including that the signature on the applicant's driver's license did not match the signatures on the W-9 form or the Tenant Application itself; the Tenant Application signature page had been copied so many times it was almost illegible; the typed in address for the apartment to be rented had been stricken from the Tenant Application and replaced with a handwritten street number without indicating what street the apartment was on; and the applicant's driver's license did not conform with recent changes implemented prior to the issue date of the license, specifically, it was not identified as a Real ID, an enhanced ID or alternatively, bear the endorsement "Not for federal purposes" required on traditional license renewals.

58.     Anel identified additional errors in the Tenant Application, including that the applicant's phone number was not Ms. Wells' number; referenced a non-existent son as an apartment occupant; falsely stated that Ms. Wells lived with her brother in his apartment when she did not and listed her brother's name wrong; stated Ms. Wells did not have a lease in her name, when she did; included a reference letter from an employer who Ms. Wells had never worked for; included a copy of a driver's license (hereinafter "fake driver's license") when Ms. Wells has never had a driver's license; and that the photo and signature on the fake driver's license did not match Ms. Wells'.

59.     Anel immediately replied to Mr. Sharma's e-mail informing him that the information on the Tenant Application was false and attached a copy of Ms. Wells' New York

State non-driver's identification (hereinafter "non-driver id") to show the photo and the signature on the fake driver's license did not belong to Ms. Wells.

60.     On February 14, 2022, Mr. Sharma asked Anel for documentation showing where Ms. Wells lived between October 2019 and February 2021, suggesting that she send him copies of leases, mortgages, and utility bills.

61.     Ms. Wells provided Mr. Sharma with a copy of her 2018-2020 renewal lease, a Con Edison bill dated November 14, 2019, her Social Security award letter dated November 15, 2019, and hospital discharge paperwork dated October 12, 2019, all of which listed her actual home address in Upper Manhattan.

62.     The November 2019 Social Security award letter showed that Ms. Wells had been receiving disability benefits since at least December 2018, further demonstrating that the employment information and tax returns attached to the Tenant Application did not belong to Ms. Wells.

63.     Mr. Sharma used two different e-mail accounts when responding to Anel, one associated with the PLLC and the other with R & R.

64.     Mr. Sharma did not disclose to Anel or to Ms. Wells in his e-mails or at any subsequent time that Defendants were debt collectors or that any information Ms. Wells provided could be used to collect the debt.

65.     Mr. Sharma cc'd someone named Brett on his e-mail.  Upon information and belief, Brett is Brett Klatsky the associate at R & R who had signed the Complaint on behalf of the PLLC.

66.      At times, Mr. Sharma also cc'd "Rose PLLC".

67. After she sent him the documents, Anel followed up with Mr. Sharma by e-mail on February 21 and 25, 2022 asking for an update, but received no response.

68. On or about February 26, 2022, Ms. Wells received a notice from New York County Civil Court, which advised her to go to court immediately to answer the Complaint to avoid the entry of a default judgment against her.

69. Anel sent a copy of the court notice to Mr. Sharma on February 26, 2022, asking him to respond and tell them what more they needed to do to prove Ms. Wells did not owe this debt.

70. After waiting a few days without receiving a response, Ms. Wells went to Manhattan Civil Court on March 3, 2022 and spent over two hours trying to answer the Complaint.

71. Ms. Wells traveled by subway and waited on line for a Spanish interpreter, only to find out when she got to the head of the line that the Clerk could not locate the file and she would have to return the next day.

72. On March 4, 2022, Ms. Wells traveled back to the courthouse, this time by car, accompanied by her niece, Linette Cabrera (hereinafter "Linette").

73. After waiting two hours on line, Ms. Wells was finally able to answer and raised an identity theft defense. She also wrote on the answer that she had suffered stress, shame, and sleepless nights as a result of the court case.

74. The court gave Ms. Wells a return date of April 6, 2022.

75. In the weeks leading up to the court date, Ms. Wells worried about what would happen if the judge did not believe her and she lost her case. She felt anxious because she did not

have the money to pay the rent arrears of almost $10,000, plus the $5,000 in attorney's fees, that the Complaint alleged she owed.

76. Ms. Wells felt ashamed that she had been sued because she had always worked hard to pay her debts on time. She worried that because the landlord had filed a case against her and a process server had come to her door, people who lived in her building or checked the court's public database would think she owed money to the landlord even though she did not.

77. On the return date of April 6, 2022, Ms. Wells had to wait two hours for her case to be called before the judge.

78. Ms. Wells spoke to an attorney appearing for Defendants, upon information and belief Brett Klatsky, prior to seeing the judge.

79. The attorney did not inform Ms. Wells that he was a debt collector or that anything she said could be used in furtherance of the collection of the debt.

80. During the preliminary conference, the attorney reiterated the allegations in the Complaint to the judge, but still did not produce a copy of the Bronx Apartment lease it claimed had been breached or a rent breakdown.

81. Instead, the attorney produced a copy of the Tenant Application.

82. Through an interpreter, Ms. Wells explained that she was the victim of identity theft, had never leased nor lived at the subject premises, and therefore did not owe the debt.

83. Ms. Wells presented her passport and non-driver id to the judge, who compared her photo and signature to the photo and signatures on the Tenant Application and the attached fake driver's license. The judge noted that Ms. Wells was not the person shown on the Tenant Applicant's fake driver's license and that the signatures did not match.

84. Nonetheless, the attorney refused to discontinue the case.

85.     The judge adjourned the case to June 23, 2022 for Ms. Wells to consult with an attorney and for the landlord's attorney to investigate Ms. Wells' claim of identity theft.

86.     On June 6, 2022, Ms. Wells retained Manhattan Legal Services to represent her in the civil court action.

87.     Manhattan Legal Services helped Ms. Wells file an Identity Theft Report with the Federal Trade Commission and sent a copy to the PLLC, along with a letter reiterating Ms. Wells' claim that she was the victim of identity theft.

88.     The letter identified problems with the Tenant Application, including that the signature and picture on the Tenant Application's driver's license did not belong to Ms. Wells; that Ms. Wells had never had a driver's license; and that the tax documents presented showed her working as a sales representative at Riverdale Motors, a job she cannot perform due to her disability and the fact that she does not read, write, or speak English.

89.     None of the information contained in the letter was new, and many of these inconsistencies had been previously mentioned by Anel Wells in her e-mail correspondence with Defendant in February 2022, were evident from the documents Ms. Wells provided to Defendant, or had been discussed on the court date, several months prior.

90.     A week later, Brett Klatsky, the R&R associate who had signed the Complaint on behalf of the PLLC, e-mailed Manhattan Legal Services and agreed to discontinue the debt collection action against Ms. Wells with prejudice after speaking with his client and conducting a "thorough review of their files."

91.     In Mr. Klatsky's communications with Manhattan Legal Services about the filing of the stipulation of discontinuance in the Civil Court action, he used a roseandroselaw.com email address and his email signature block identified R&R, not the PLLC, as his employer.

92.     The parties entered into a stipulation and the Civil Court action was discontinued with prejudice on the return date of June 23, 2022.

93.     Throughout the pendency of the litigation, Ms. Wells had difficulty sleeping, had headaches that lasted for days, as well as diarrhea.  It affected her appetite and she lost almost thirty pounds over the course of the litigation.

94.     Ms. Wells was so upset by being sued that she no longer wanted to spend time with her family or leave the house, and struggled to complete her daily tasks, including taking care of her elderly mother.

95.     Ms. Wells brings the instant action asserting that Defendants violated her rights under the FDCPA and its implementing regulations, Regulation F, and seeks statutory and actual damages.

## FIRST CAUSE OF ACTION

### Violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* and Regulation F, 12 CFR §1006 *et seq*

96.     Plaintiff restates and incorporates the allegations of paragraphs 1 through 95 as if fully set forth herein.

97.     Defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. 1692 *et seq.* Defendants' violations include, but are not limited to the following:

a.   Defendants violated 15 U.S.C. § 1692d by engaging in conduct intended to harass, oppress, or abuse Ms. Wells in the collection of a debt.

b.   Defendants violated 15 U.S.C. § 1692e(2) by falsely representing that Ms. Wells owed the debt;

c.   Defendants violated 15 U.S.C. § 1692e(3) by making false representations and implications that, as attorneys, they engaged in a meaningful review of the Complaint;

d.   Defendants violated 15 U.S.C. § 1692e(5) by threatening to obtain a judgment and attorney's fees their client was not entitled to;

e.   Defendants violated 15 U.S.C. § 1692e(10) by using false representations and deceptive means to attempt to collect the debt;

f.   Defendants violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect a debt;

g.   Defendants violated 15 U.S.C. §1692 e(11) and 1692(g) by failing to inform Ms. Wells that it was a debt collector and that she had a right to request verification of the debt;

h.   Defendants violated Regulation F, 12 CFR §1006.18(e)(1) and (2), as amended November 30, 2021, when it failed to disclose to Plaintiff in its initial and subsequent communications with Plaintiff that it was a debt collector collecting a debt and would use information it obtained from her to collect the debt.

98.   As a result of the above FDCPA and Regulation F violations, Defendants are liable to Plaintiff for statutory damages in an amount to be determined at the time of trial, but not less than $1,000 per violation; actual damages, including emotional distress; reasonable attorney's fees; and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court award the following relief:

(a)  Declaratory judgment that Defendants' actions violate 15 U.S.C. §§ 1692d,

1692e, 1692f, and 1692g;

(b) Actual Damages;

(c) Statutory damages;

(d) Treble damages;

(e)  Costs and reasonable attorney's fees to Plaintiff pursuant to 15 U.S.C. §

1692k; and

(f) Such other and further relief as may be just and proper.

## DEMAND FOR A JURY TRIAL

In accordance with Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues so

triable.

Dated: July 6, 2023

Respectfully submitted,

Manhattan Legal Services
1 W. 125th St., 2nd Fl.
New York, NY 10027

____/s/_____
Mary McCune (MM3298), of Counsel
(646) 442-3143
mmccune@lsnyc.org

_____/s/_____
Sandra Sandoval, of Counsel
(646) 442-2055
ssandoval@lsnyc.org
_____/s/_____
Molly Rockett, of Counsel